UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Sheronda Madkins,

    Plaintiff,

v.                                                Case No. 18-13130

State Farm Fire and Casualty,           Sean F. Cox
                                                United States District Court Judge

    Defendant.
_____/

## OPINION & ORDER DENYING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff had a homeowners insurance policy with Defendant and filed a claim after a fire at her home. After Defendant denied her claim, Plaintiff filed this action. Following the close of discovery, Defendant filed the instant summary judgment motion. Defendant asserts that it is entitled to judgment as a matter of law because Plaintiff submitted a personal property inventory that included a number of items that it alleges were copied from another one previously submitted to Defendant by another insured, and therefore, Plaintiff violated the insurance policy's concealment and fraud provision. The parties have briefed the issues and the Court heard oral argument on September 12, 2019. The Court shall DENY the motion because the issue of whether Plaintiff had an intent to defraud Defendant, under the facts presented here, is a question of fact for the jury.

## BACKGROUND

Plaintiff Sheronda Madkins filed this action against Defendant State Farm Fire and Casualty Company in state court and Defendant removed it to federal Court, based on diversity

1

jurisdiction. Plaintiff's complaint includes the following counts: 1) "Breach of Contract" (Count I); 2) "Violation of the Uniform Trade Practices Act" (Count II); 3) "Insurance Bad Faith" (Count III); and 4) "Declaratory Relief for Insurance Bad Faith" (Count IV).

The Scheduling Order in this case reflects that discovery closed on April 29, 2019. On May 29, 2019, Defendant filed a Motion for Summary Judgment. Plaintiff filed a response brief opposing the motion on June 19, 2019. Defendant did not file a reply brief in support of its motion. The motion was heard on September 12, 2019.

In support of its summary judgment motion, Defendant filed a Statement of Material Facts Not in Dispute, as directed in this Court's practice guidelines. In response, Plaintiff filed a "Counter-Statement of Material Facts Not in Dispute" but it does not entirely align with the paragraphs set forth in Defendant's statement.

It is undisputed that Plaintiff was insured with Defendant under a homeowners insurance policy and that Plaintiff's home had a fire on November 22, 2018. A copy of the insurance policy is attached as Exhibit A to Defendant's motion. Plaintiff alleges, and Defendant does not appear to dispute, that it was a "total loss" fire.

After the fire, Plaintiff retained Raymond Fair as a Public Adjuster, to assist her in the preparation, presentation and adjusting of her insurance claim. (*See* Plaintiff's "Residential Public Adjusting Contract" with Raymond Fair, attached as Exhibit B to Def.'s Motion).

With Mr. Fair's assistance, Plaintiff signed and submitted a "Proof of Loss" form to Defendant, claiming damages for the building in the amount of $226,005.00 and claiming $97,000.00 in damages for its contents. (Ex. C to Def.'s Motion). These figures were noted to be "subject to change."

An itemized written list of personal property ("the Inventory") was also submitted to

Defendant in relation to Plaintiff's claim. The Inventory was not signed by Plaintiff. It is undisputed that the Inventory that was submitted to Defendant regarding Plaintiff's claim had the name "Monique Sinkfield" at the top of the document, rather than Plaintiff's name (Sheronda Madkins).

Fair testified that he prepared the Inventory after meeting with Plaintiff on more than one occasion. (Fair Dep. at 29-30). Fair used a previous inventory he had prepared for another client named Monique Sinkfield to ask questions to Plaintiff to jog her memory regarding various items she may have lost. (*Id*. at 30-33). Fair testified that he asked Plaintiff questions, line-by-line, as he reviewed the various items on the prior inventory and "pretty much copied and paste, you know, as we went through our conversation." (*Id*.). Fair testified that he incorrectly left the name Monique Sinkfield on the top of the Inventory he submitted for Plaintiff's claim.

Plaintiff testified that her understanding of the Inventory was that it is "my stuff that I lost" in the fire. (Pl.'s 2/23/18 Dep. at 91). Her Public Adjuster prepared it, with her assistance. (*Id*.). Plaintiff testified:

> Q. All right. So was it like – tell me how you prepared it?
> A. I couldn't remember everything that was in my house because I've been there for a minute. So he showed me paperwork to try to jog my memory, did I have this, did I have that. So he depreciated the numbers. So he depreciated the suff I had and how long I had it for.
> Q. Did you draft this while you were at his office?
> A. I was at his office.
> Q. He showed you things –
> A. Like previous cases he had, he showed me different things, like pots, pans, T-shirts, trying to make me remember things that was in my home.
> Q. I see. So he showed you like someone else's inventory?
> A. Yes.
> Q. And so you said, oh, I had that?
> A. Yes.

(*Id*. at 91-92). Plaintiff further testified, during her second deposition:

Q. Now, there was a second Proof of Loss that was filed . . . do you recall seeing a document like this which is marked as Exhibit 2 which is the Proof of Loss that was submitted to State Farm?
A. This paper?
Q. Yes.
A. Yes, I recall seeing this paper.
Q. Yeah. And it was marked as Exhibit 1 during your second exam under oath, but do you recall seeing this before it was submitted to State Farm?
A. No.
Q. Okay. At some point in time you sat down to do an inventory with Mr. Fair?
A. Yes.
Q. Can you tell me what the process was, how the two of you did that?
A. I came to his office, he had some, his files and his laptop out and he said he was just trying to jog my memory on what was in my house.
Q. Okay. What were the kinds of questions he asked you?
A. Like was, did I have this or did I have that or –
Q. Did he ask you anything about how old it was?
A. Yes.
Q. Okay. Did he ask you where you may have bought it?
A. Yes.
Q. Okay.
A. Or if I could remember where I bought it.
Q. Did he tell you what he was going to do if you couldn't remember anything?
A. No.
Q. Okay. Did he show you the computer screen he was working on at the time?
A. No.
. . . .
Q. Okay. Did he tell you how he was coming up with this information to jog your memory?
A. No.
. . . .
Q. Okay. How long do you think you met with Mr. Fair putting together the inventory?
A. We met a couple times.
Q. Okay. How many, did you spend a couple hours together total?
A. Maybe a couple hours.
Q. Okay. Did you put anything together for him independent of his sitting down and asking you questions about things?
A. Yes, I sent him an email of some stuff I know that were in the house.
. . . .
Q. So if he jogged your memory it was by his asking you questions.

> A. Correct.
> Q. Okay, great. When you were done with the process did you go back and review what he had put together?
> A. No.
> Q. Okay. So after you had this initial meeting with him did he ever email you a copy of the inventory to ask you to review it?
> A. He tried but it was too big, I couldn't pull it up on the computer.
> Q. Okay. So did you at that time have any idea as to what it was that he was going to be submitting?
> A. No.

(Pl.'s 5/9/19 Dep. at 7-13). Plaintiff testified that the first time she saw the Inventory was during her first deposition in this case and that she recalled Mr. Fair having asked her about all the different items on the list, and that it looked accurate to her. (*Id*. at 13-14).

After the Proof of Loss and Inventory were submitted, someone at State Farm apparently noticed the name Monique Sinkfield on the Inventory. Defendant contends that, coincidentally, Monique Sinkfield was an insured of State Farm. Defendant states that its Exhibit E is the inventory that Sinkfield submitted to it, but it has not submitted any affidavits supporting that assertion. The two Inventories have multiple different items but also have multiple items that are identical.

It appears that Defendant denied Plaintiff's insurance claim in its entirety (ie., both the claimed damages to the building and its claimed contents of personal property).

Along with her response in opposition to the motion, Plaintiff submitted an Affidavit wherein she states, in pertinent part:

> 3. That on November 22, 2017, I lost my home and all of personal property in a total loss fire.
>
> 4. That based on the total loss to my home and personal property, I entered into a contract with a public adjuster, Raymond Fair, c/o Community Claims Service, LLC (the "PA"), to assist me in the processing of my claim with State Farm, and to completely inventory my damages,

including, but not limited to, the amount of loss related to the building/home, and the amount of loss to all of my personal property that was burned as a result of the fire.

5. That when meeting with the PA, I had difficulty and/or was unable to identify each and every single item of personal property that I owned and lost in the fire, solely based on memory, except for several larger items, which I emailed to the PA. Therefore, the PA showed me and referenced to what he described as logs and sheets from another individual's claim that he previously had worked on, in order to assist me with jogging my memory and recalling my personal property items.

6. That, albeit, I was unable to remember and recall all of my personal property items, and therefore, was unable to list all of my personal property in the inventory sheet, the logs and sheets used by the PA did, in fact, jog my memory and help me recollect what personal property items I had owned and lost in the fire.

7. That I did not see, view, or otherwise approve the final inventory spreadsheet before the PA submitted it to State Farm.

8. Despite whether any of my personal property claimed in this case are similar to those of another individual, the contents submitted to State Farm, as testified to under oath in this case, are my own personal property items that I once owned and lost as result of the fire.

9. That at all times relevant to this claim of loss, I have acted in good faith and never intended to defraud State Farm, whatsoever.

(ECF No. 15-1).

## STANDARD OF DECISION

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

**ANALYSIS**

In the pending motion, Defendant asks the Court to grant summary judgment in its favor and rule that it appropriately denied Plaintiff's insurance claim. Defendant contends that Plaintiff intentionally misrepresented her loss in connection with the inventory of personal property that was submitted in support of her claim, in violation of the insurance policy's concealment and fraud provision. Defendant's motion takes the position that the various duplicate items on the two inventories can only be explained by fraud and that Plaintiff has intentionally misrepresented her loss.

In response, Plaintiff's counsel directs the Court to *West v. Farm Bureau Mut. Ins. Co. of Michigan*, 402 Mich. 67 (1977), and other cases. Plaintiff asserts that, based on Plaintiff's testimony as to how the inventory was created, there is a genuine issue of material fact as to whether Plaintiff intended to defraud Defendants.

The Court agrees with Plaintiff and shall deny Defendant's motion because the issue of whether Plaintiff intentionally misrepresented her loss is one for the jury to decide at trial.

Michigan law governs in this diversity action. "Under Michigan law, an insured's misstatement on a proof of loss will not prevent recovery on a fire insurance policy unless the false statement was made knowingly and willfully and with the *intent* to defraud the insurer." *Steele v. Great American Ins. Co.*, 850 F.2d 692 (6th Cir. 1988) (emphasis in original) (citing

7

*Campbell v. Great Lakes Ins. Co. of Chicago*, 228 Mich. 636 (1924) and *Barrett v. Connecticut Fire Ins. Co.*, 195 Mich. 209 (1917)).

"The same is true where the misstatement was carelessly, but not recklessly or intentionally, made." *Steele, supra*. The Michigan Supreme Court has more recently "affirmed the validity of this rule, *see West v. Farm Bureau Mutual Insurance Co. of Michigan*, 402 Mich. 67, 259 N.W.2d 556 (1977), which also has been applied by [the Sixth Circuit], *see D.R.C.D.T., Inc. v. Integrity Insurance Co.*, 816 F.2d 273 (6th Cir. 1987) (applying Michigan law)." *Id.* In *Steele*, the Sixth Circuit further explained:

> This rule applies equally to a number of affirmative defenses that an insurer may raise to void a policy. "Where an insurance policy provides that an insured's concealment, misrepresentation, fraud, or false swearing voids the policy, the insured must have actually intended to defraud the insurer." *West*, 259 N.W.2d at 557. Furthermore, a misrepresentation regarding a small portion of the loss may not cause forfeiture of the entire coverage unless the insured is "shown to be clearly culpable." *Id.* We have determined that under Michigan law, fraud must be proved by clear and convincing evidence, *Disner v. Westinghouse Electric Corp.*, 726 F.2d 1106, 1109-11 (6th Cir. 1984), even when raised as an affirmative defense, *D.R.C.D.T.,* 816 F.2d at 278.
>
> Therefore, under Michigan law, the insured's intent in making a misrepresentation in a proof of loss is a material fact.

*Id.*

In light of Plaintiff's testimony as to how the Inventory was created, and that it accurately reflects her goof-faith recollection of the items she lost, a reasonable juror could conclude that Plaintiff did not intend to defraud Defendant, despite the fact that her Inventory had some of the same items that were listed on a previous inventory submitted by another insured. That is because there is a plausible non-fraudulent explanation for the why the Inventory submitted on Plaintiff's behalf had duplicate items. The question of intent to defraud in this case is a question of fact for the jury.

8

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion for Summary Judgment is DENIED.

                                                s/Sean F. Cox
                                                Sean F. Cox
                                                United States District Judge

Dated: September 17, 2019